UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:21CR29 (OAW) |
| v. | : | |
| CALVIN ROBERSON | : | March 5, 2024 |

## GOVERNMENT'S SENTENCING MEMORANDUM

Calvin Roberson, along with codefendant Brandon Batiste, kidnapped, robbed, and murdered Francisco Roman, Jr. on Christmas Eve and into the early morning hours of Christmas Day in 2020. Francisco was a beloved son and father of three young children. He was only 28 years old when Roberson and Batiste murdered him. Based on this horrific conduct, this Court recently sentenced Batiste to 42 years of imprisonment. The government respectfully requests that the Court also sentence Roberson to a very significant sentence of imprisonment.

A. **FACTUAL BACKGROUND**

In approximately August 2020, Brandon Batiste began planning the murder of Francisco Roman, Jr. He intended to kidnap and rob Francisco and then murder him in retaliation for a prior altercation they had resulting in Batiste suffering significant injuries. Batiste enlisted one of his girlfriends, Natasha Garcia, to meet with Francisco to buy marijuana and report back to him what vehicle Francisco was driving, where they met, and what his license plate number was.

Around December 2020, Garcia noticed that Batiste was spending a lot of time with Roberson, a friend that Batiste had met when they were incarcerated together previously. Batiste involved Roberson in his plan to kidnap Francisco. In December 2020, Batiste and Roberson conducted surveillance of Francisco to determine where he lived.

In late December, Batiste instructed Garcia to use her relationship with Francisco to lure him to her apartment. Garcia twice attempted to do so, but Francisco did not show up either day.

During one of those occasions, Batiste and Roberson were waiting at Garcia's apartment. They fell asleep while waiting for Francisco, and Garcia took a photograph of them, dressed in all black:



On December 24, 2020, Garcia's attempt to lure Francisco succeeded. When Francisco agreed to Garcia's invitation to come over that day, Garcia notified Batiste. Batiste and Roberson then went to Garcia's apartment. Garcia knew the plan was for Batiste and Roberson to kidnap, rob, and murder Francisco. When Francisco arrived, Garcia met him in the parking lot and led him upstairs. Francisco was wearing an orthopedic boot due to a leg/foot injury. Almost immediately after Francisco entered Garcia's apartment, Batiste and Roberson sprang from their hiding places, armed with firearms, and confronted him. Both men physically restrained and handcuffed Francisco and forcibly took his property which included: a Gucci backpack and baseball hat, marijuana, earrings, and a necklace. Garcia witnessed Batiste and Roberson confront Francisco with firearms, and she immediately left her apartment.

Once they had restrained Francisco, Batiste went to Francisco's apartment to search for drugs, proceeds, or other items of value. Meanwhile, Roberson held Francisco at gunpoint at Garcia's apartment. After stealing Francisco's Sony PS5, Batiste returned to Garcia's apartment, and he and Roberson then coerced the handcuffed Francisco to his Acura and forced him to lay down in the back of the vehicle. Batiste and Roberson then drove Francisco to Hartford. Roberson drove Roman's Acura, and Batiste drove close by in a GMC Acadia, which he had rented from a

car rental agency in East Hartford. Batiste and Roberson stopped in Enfield while en route to Hartford. After stopping their vehicles on a residential street, Batiste entered Francisco's Acura and shot him. After Batiste shot Francisco, both men resumed their travel to Hartford, with Roberson driving Roman's Acura and Batiste driving his rental car. According to Garcia, Batiste later told her that, as they were driving to Hartford, Roberson told him that he heard Francisco gurgling, and so he shot Francisco multiple times.

The men arrived in Hartford in the early morning hours on Christmas Day. The arrival of the two vehicles and their travel within Hartford were captured on various city and residential cameras. Their location within Hartford was also confirmed by cell tower evidence and license plate readers. A residential camera captured the Acura arrive on Shultas Place in Hartford at approximately 1:03 a.m., where it remained until it was burned on December 26, 2020. At approximately 1:08 a.m., a city camera captured the GMC Acadia traveling away from the area of Shultas Place.

After stopping at a gas station where Roberson was captured on camera, Batiste and Roberson drove towards Waterbury where Roberson was living with Shamari Smith. While traveling on I-84, Roberson threw the murder weapon into a wooded area off I-84 in Plainville. Law enforcement later recovered the murder weapon in this area.

On December 26, Batiste went back to Hartford multiple times. That evening, he arrived at Shultas Place near where Roman's Acura was parked minutes before the Acura was set on fire at about 8:39 p.m. In response to multiple 911 calls, emergency personnel responded to 114 Shultas Place and found a 2010 Acura ZDX parked along the curb fully engulfed in flames. As fire department personnel extinguished the fire, they observed a deceased male body in the rear hatch compartment. The body, later determined to be Francisco, had been severely burned. Upon closer

3

inspection, a spent shell casing was found in the hatch compartment, several inches from his body. Francisco also had metal handcuffs bound on one of his wrists.

Hartford police and fire personnel detected a strong odor of gasoline and a melted gas can in the vehicle. The Fire Marshal determined that the cause of the fire was "intentional," and that "flammable liquid" contributed to the fire's ignition.

A post-mortem examination revealed gunshot wounds to Francisco's torso, left shoulder, and head, with three projectiles recovered from his body. The cause of death was gunshot wounds to Francisco's head, torso, and extremity and the manner of death was homicide.

### B. PROCEDURAL HISTORY AND GUIDELINES CALCULATIONS

On July 28, 2021, a grand jury returned a superseding indictment charging Roberson with conspiracy to commit kidnapping, kidnapping resulting in death, firearm-related murder, interference with commerce by robbery, and interstate transportation of a stolen motor vehicle, all in violation of 18 U.S.C. §§ 924(j)(1), 1201(a), 1201(c), 1951, and 2312. On April 27, 2023, Roberson entered a guilty plea to Count One (kidnapping conspiracy) and Count Four (firearm-related murder). PSR ¶ 1. The maximum statutory term of imprisonment on both counts is life. PSR ¶ 123.

According to the PSR, an offense involving first degree murder has a base offense level of 43 under U.S.S.G. § 2A1.1(a). PSR ¶ 50. After a three-level reduction for acceptance of responsibility, the PSR found a total offense level of 40. PSR ¶ 59. The PSR determined that Roberson has a criminal history category of III, PSR ¶¶ 72-73, which combined with an offense level of 40 results in an advisory Guidelines range of 360 months to life imprisonment. PSR ¶ 124.

### C. ARGUMENT

#### 1. A Guidelines Sentence is Warranted Under the Factors Set Forth in Title 18, United States Code, Section 3553(a).

The sentencing factors under Section 3553(a) weigh in favor of a very significant sentence, particularly given the seriousness and brutality of the offense and the need for a just punishment given the harm to Francisco and his family.

##### a. Nature, Circumstances, and Seriousness of the Offense

There is no more serious crime than taking another person's life, especially when the taking of that life is planned, violent, and brutal. Roberson planned the crimes along with Batiste by conducting surveillance of Roman with Batiste and even participating in two failed attempts to ambush Roman, as shown in the photograph above. This was no rash decision made in the heat of passion. Roberson made a conscious choice to participate in these crimes with Batiste.

The brutality of the murder is striking. Batiste and Roberson ambushed an unsuspecting and injured Francisco in Garcia's apartment when they pointed firearms at him and handcuffed his wrists. They shoved Francisco into the cramped rear hatch area of his own car, as they drove off with him not knowing if he would live or die. Francisco was unarmed, defenseless, and wearing an orthopedic boot.

Murdering Francisco was senseless. After having accomplished the robbery, Roberson chose to continue with Batiste's plan to murder Roman instead of letting him go. Roberson had many opportunities to put a stop to the murder, particularly when the first two attempts failed, and again after the robbery was accomplished. But Roberson willingly chose to go along with the plan to end Francisco's life. This factor weighs heavily in support of a significant sentence.

b. **History and Characteristics of the Defendant**

Roberson was 38 years old when he murdered Francisco, and he has a long and chilling history of violence and murder. In 2002, he was convicted of assault and battery with a dangerous weapon. PSR ¶ 65. Four years later, on December 2, 2006, Roberson was arrested and later convicted for assault and battery with a dangerous weapon for an incident where he shot a victim at the Hideaway Lounge in Springfield, Massachusetts. PSR ¶ 68. Just five days later, on December 7, 2006, he participated in the murder of Loan Nguyen during an armed robbery at a nail salon. PSR ¶ 71. And five days after that, on December 12, 2006, Roberson committed armed robbery, armed assault to rob, and assault and battery with a dangerous weapon, and he was arrested with a loaded firearm that had a live round in the chamber. PSR ¶ 66.

After serving time for those offenses, on October 11, 2016, Roberson murdered Yonaides Pichardo as part of a contract killing where he was paid $5,000 for the murder. PSR ¶ 71. On October 18, 2017, Roberson murdered his previous victim's younger brother, David Pichardo. PSR ¶ 71. In 2018, Roberson was in a car when someone else was shot. Roberson fled the scene with two firearms, and he was charged and convicted of various firearm offenses relating to that incident. PSR ¶ 70.

In short, Batiste enlisted Roberson in his plan to murder Francisco because Batiste knew that Roberson was a violent person and a murderer. His background shows that Roberson has no respect for human life. In his sentencing memorandum, Roberson argues in mitigation that it was Batiste, and not him, who had the motive to murder Francisco, and that he had never even met Francisco, as if that somehow makes his crime less serious. The fact that he was willing to murder a complete stranger for no reason makes him an extreme danger to the community.

To be sure, Roberson – like Batiste and many other individuals – had a difficult childhood and suffered traumas at the hands of people who should have taken better care of him. But there is

6

a disconnect between those traumas and Roberson's lifelong, repeated decisions to violently assault and murder people, including Francisco. Roberson cites a 1990 study for the proposition that individuals with Adverse Childhood Experiences (ACEs) have "higher rates of workplace absenteeism, financial problems, and lower lifetime income." Roberson Memo. at 13. While it is clear that the effects of childhood traumas can carry into adulthood, Roberson cites no studies that show that such traumas cause people to intentionally murder and violently assault people repeatedly over decades. *Id.*

Roberson claims to be remorseful for his role in murdering Francisco. It is for the Court to decide whether Roberson's apology is genuine and sincere. After having committed so much violence against others during in his life, it is hard to comprehend how, all of a sudden, Roberson has had a change of heart when for so long he continued hurting people, over and over again.

### c. Just Punishment, Respect for the Law, Deterrence, and Protection of the Public

Finally, a very significant sentence is needed to promote respect for the law and to provide a just punishment for the crimes Roberson committed. In this case, there is a real need for deterrence, incapacitation, and protection of the public from Roberson. The public absolutely needs to be protected from Roberson given his criminal history, who is someone capable of ambushing and robbing another person, handcuffing that person's wrists and forcing him in the back of a car, conspiring to murder him, and abandoning his lifeless body in a car on Christmas Day. It was a particularly heinous way for Francisco to die, and it was a particularly heinous way to make his family suffer. People who commit such crimes must be punished severely to protect the public and to prevent others from committing similar acts. Roberson has lived his life outside of the law, and he must be stopped from ever committing such a crime again.

### D. RESTITUTION

Francisco's family[1] is entitled to restitution under Title 18, United States Code, Section 3663A. The total amount of restitution requested is $7,922.59 for Francisco's funeral expenses. The Government requests that his amount be joint and several with Brandon Batiste and Natasha Garcia.

### E. CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court sentence Roberson to a very significant term of imprisonment pursuant to the factors under Section 3553(a).

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

/s/ *Angel M. Krull*
ANGE M. KRULL
Assistant United States Attorney
Federal Bar No. phv11042
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3821

---

[1] Francisco's family and friends have written numerous victim impact statements, and some of them may wish to be heard at the sentencing hearing. The written statements have been submitted to the Probation Officer and are included in the PSR.

CERTIFICATION OF SERVICE

      This is to certify that on March 5, 2024, a copy of the foregoing Government's Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ *Angel M. Krull*
      ANGEL M. KRULL
      ASSISTANT UNITED STATES ATTORNEY